# In the United States Court of Federal Claims

No. 12-66T

(E-Filed:  April 30, 2014)

| | |
|---|---|
| TOM GONZALES, as Personal Representative for the Estate of Thomas J. Gonzales, II; Thomas J. Gonzales, II, Administrative Trust,<br><br>           Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>           Defendant. | Cross-Motions for Summary Judgment, RCFC 56; Luxury Tax, I.R.C. § 4002; Demonstrator Exemption Under I.R.C. § 4002(b)(1); Gas Guzzler Tax; I.R.C. § 4064; Abatement of Penalties and Interest |

Frances D. Sheehy, Coconut Creek, FL, for plaintiff.

Shelley dA. Leonard, with whom were Kathryn Keneally, Assistant Attorney General, and David I. Pincus, Chief, Court of Federal Claims Section, United States Department of Justice, Tax Division, Washington, DC, for defendant.

## OPINION AND ORDER

**CAMPBELL-SMITH, Chief Judge.**

Plaintiff brought suit in this court challenging the luxury tax and gas guzzler tax assessments imposed on an imported McLaren F-1 (the car, the vehicle, the McLaren), a high-performance, luxury vehicle.  Plaintiff seeks to recover the tax paid,[1] asserting that the imported McLaren was exempt from the assessed taxes.  See Complaint (Compl.),

---

[1]    Thomas J. Gonzales, II (Mr. Gonzales) purchased and imported the McLaren and transferred the car to his father, Tom Gonzales, the next year.  Mr. Gonzales died shortly thereafter, and his father became executor of the estate and trustee of the administrative trust.  Plaintiffs are Mr. Gonzales's father, in his capacity as personal representative of the estate, and the Thomas J. Gonzales, II, Administrative Trust.  The court refers to these entities collectively as "plaintiff."

ECF No. 1, filed Feb. 1, 2012.  Defendant (the government) filed its answer and counterclaim on June 15, 2012, Def.'s Ans. and Countercl., ECF No. 13, seeking an additional $20,000 in luxury tax based on the purchase price of $1.5 million for the McLaren rather than the initially assessed price, $1 million.  Id. ¶¶ 51, 57.

The parties conducted discovery in late 2012 and early 2013.  Cross-motions for summary judgment were filed thereafter.  Before the court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot.) and Plaintiff's Proposed Findings of Uncontroverted Facts, ECF No. 26, attached to which is an Appendix (Pl.'s App.), ECF Nos. 26-1 to -3, filed October 28, 2013; Defendant's Cross-Motion for Summary Judgment and Response to Plaintiff's Motion (Def.'s Mot.), ECF No. 34, attached to which is an Appendix (Def.'s App.), ECF No. 34-1, and Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Facts, ECF No. 34-2, filed December 20, 2013; Plaintiff's Response and Reply (Pl.'s Resp.), ECF No. 37, filed January 20, 2014; and Defendant's Reply (Def.'s Reply), ECF No. 38, filed January 27, 2014.[2]

Oral argument was deemed unnecessary.  The matter is now ripe for decision.  For the reasons described below, the court **DENIES** plaintiff's motion for summary judgment and **GRANTS** defendant's cross-motion.

I.      Background[3]

In May 2000, Thomas J. Gonzales (Mr. Gonzales) purchased and imported a 1998 McLaren F-1 from a German seller through a stateside car dealer located in Missouri.  Compl. ¶ 8.  A serious car collector, Mr. Gonzales desired to add the McLaren to his collection.  Def.'s App. 12 at 25:15–20.

The car required modifications to the engine and other components to meet certain environmental standards prescribed by the Environmental Protection Agency (EPA).  Def.'s Mot. 4. To allow the adjustments to be made, the car was held in a secure area by Customs for over a year.  See Def.'s App. 42, 49–51.  The car had shipped to the United States with an odometer reading of 9905 miles.  Compl. ¶ 10.  After its testing, modification, and delivery to Mr. Gonzales, the odometer read, 10,041 miles.  Id.

---

[2]      When citing to the appendix to plaintiff's motion for summary judgment (Pl.'s App.), ECF Nos. 26-1 to -3, and to the appendix to defendant's cross-motion for summary judgment (Def.'s App.), ECF No. 34-1, the court cites to the page number assigned by the court's electronic case filing system that appears at the top of the referenced page.

[3]      The facts are derived from the parties' filings and are uncontested unless otherwise noted.

Mr. Gonzales applied for, and received, an exemption from the Department of Transportation's (DOT) car safety requirements.  This exemption, known as a "show or display" exemption, can be obtained for cars with historical or technological significance.  Compl. ¶ 9.  The McLaren F-1 is one of the cars that the DOT has pre-approved as eligible for such exemption.  Def.'s App. 42 ¶ 9; Dep't of Transp., Vehicles Determined Eligible for Importation for Show or Display, www.nhtsa.gov/cars/rules/import/sdlist040109.pdf.[4]

In the DOT files are several applications for a show or display exemption that Mr. Gonzales submitted for the McLaren.  Def.'s App. 61–72.  As indicated in the applications, he intended to engage the car in "on-road use."  Def.'s App. 68, 72.  A car that is eligible for a show or display exemption can be driven a maximum of 2500 miles per year.  49 C.F.R. § 591.6(f)(2).  Correspondence from an Allstate insurance agent to Mr. Gonzales confirmed that the car was insured to permit "2500 miles [of driving] per year."  Def.'s App. 65.  DOT granted Mr. Gonzales's application for the show or display exemption on July 31, 2001.  Def.'s App. 60.

Upon certification that the McLaren had been adapted to meet EPA emissions standards and that the DOT exemption had been granted, the car was released from Customs in August 2001 for transport within the United States.  Def.'s App. 49–51.  A truck transported the car to California for garage storage at one of Mr. Gonzales's homes.  The car remained garaged there for the remainder of the time Mr. Gonzales owned it.  See Def.'s App. 30 at 96:17–97:2.

Lamentably, before Mr. Gonzales received delivery of the car, he was diagnosed with terminal gastric cancer.  Def.'s App. 14 at 30:20–31: 17.  In the fall of 2001, Mr. Gonzales transferred the newly delivered McLaren to his father to satisfy an outstanding debt for expenses related to a yacht the two owned.  Def.'s App. 31 at 98:16–22, 99: 1–14, 100: 15–17; 38 at 128: 20–22.  Mr. Gonzales died several months later, in December 2001.  Def.'s App. 14 at 31:7–11.  His father became the executor of his estate and the trustee of his administrative trust.  Def.'s App. 32 at 102:8–21.

Plaintiff asserts that the McLaren has never been driven on public streets in the United States either during Mr. Gonzales's ownership of the car or after the transfer to Mr. Gonzales's father.  Compl. ¶ 11.  Mr. Gonzales's father sold the McLaren in March

---

[4]     When a vehicle has been pre-approved for the show or display exemption, "an application to import such a vehicle need not include documentation to support the technological and/or historical significance of the vehicle," which would otherwise be required on the application.  Dep't of Transp., Vehicles Determined Eligible for Importation for Show or Display, www.nhtsa.gov/cars/rules/import/sdlist040109.pdf.

2011.  Def.'s App. 83.  The mileage on the car was "approximately 10,000 km" at the time of sale.  Def.'s App. 105.[5]

In 2005—four years after Mr. Gonzales's death—the Internal Revenue Service (IRS) assessed against the administrative trust taxes related to the McLaren.  Def.'s App. 107–08.  For the tax period ending September 30, 2001, the Agency assessed, pursuant to I.R.C. § 4001, a luxury tax in the amount of $38,480, and the Agency assessed, pursuant to § 4064(a), a gas guzzler tax in the amount of $7,700.[6]  Compl. ¶ 12; Def.'s App. 107–08.  On March 31, 2011, plaintiff paid, under protest, the total assessed tax in the amount of $46,180.  Compl. ¶ 36; Def.'s App. 108; see also Compl. ¶¶ 12–35 (describing details of administrative process).  In July 2011, plaintiff filed a Form 843 claim for refund of the assessed tax and for the abatement of interest and penalties.  Compl. ¶ 37.

Plaintiff filed this suit on February 1, 2012, seeking a refund of $46,180 (the amount of the collected excise taxes) plus interest, attorneys' fees, and costs.  See Compl.  Plaintiff also seeks abatement of the assessed interest and penalties in the event that the court rules that the tax applies to plaintiff.  Id. ¶ 45.

On June 15, 2012, defendant filed its answer and counterclaim, seeking an additional $20,000 in luxury tax.  Def.'s Ans. & Countercl. ¶¶ 51, 57.  The IRS assessed the additional $20,000 tax on June 25, 2012, because the purchase price of the McLaren was more than had been determined originally.  Def.'s App. 108.  Plaintiff does not dispute that the purchase price for the McLaren was $1.5 million, rather than the initially assessed $1 million.  Nor does plaintiff dispute that if it is liable for the assessed tax, it owes the additional $20,000 of luxury tax.  Pl.'s Mot. 2, n.2.  Instead, plaintiff claims that it is exempted from such liability.

II.   Legal Standards

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC).  A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  The movant has the burden of establishing "the absence of any genuine issue of material fact and entitlement to judgment as a matter of law."  Crater Corp. v. Lucent Techs., Inc., 255 F.3d 1361,

---

[5]     The approximate mileage of the vehicle post-modification is referenced in the parties' filings as both 10,000 miles and 10,000 kilometers.  Compare Compl. ¶ 10, with Def.'s App. 105.  This discrepancy is not salient to the court's analysis of the taxes owed.

[6]     The luxury tax was calculated based on the vehicle's purchase price, § 4001(a), (e), (f), and the gas guzzler tax was calculated based on the vehicle's fuel economy, § 4064(a).

1366 (Fed. Cir. 2001). "The party opposing the motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985).

In considering a motion for summary judgment, the court draws all inferences in favor of the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Mann v. United States, 334 F.3d 1048, 1050 (Fed. Cir. 2003). When considering cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

In a tax refund suit, plaintiff bears the burden of proving that the assessed tax was incorrect. Helvering v. Taylor, 293 U.S. 507, 515 (1935). Plaintiff also must establish the amount it is entitled to recover. United States v. Janis, 428 U.S. 433, 440 (1976).

III.    Discussion

A.    Plaintiff Is Subject to the Luxury Tax

Section § 4001 of the Internal Revenue Code (I.R.C.) imposes an excise tax "on the [first] retail sale of any [luxury] passenger vehicle." I.R.C. § 4001.[7] Section 4002 of the I.R.C. explains that "[i]f any person uses a passenger vehicle (including any use after importation) before the [first] retail sale of such vehicle, then such person shall be liable for tax under this subchapter in the same manner as if such vehicle were sold at retail by him." I.R.C. § 4002(b)(1). Subsection 4002(b)(3) carves out an exemption from the tax on use of the vehicle described in section 4002(b)(1), and states, "[p]aragraph (1) shall not apply to any use of a passenger vehicle as a demonstrator." I.R.C. § 4002(b)(3). The term "demonstrator" is not defined in the statute, and the relevant proposed regulations have not been adopted by the Agency. Cf. I.R.C. § 4001–03; 56 Fed. Reg. 36-01 (proposed Jan. 2, 1991). Absent a clear statutory or regulatory definition of the term, the parties have called into question whether the McLaren qualifies as a demonstrator.

1.    The McLaren Is Not Subject to the Demonstrator Exemption

The parties disagree about whether Mr. Gonzales's use of the McLaren fell within the demonstrator exemption under the luxury tax statute. This contested issue prompts the Court to consider the pertinent statutory language.

---

[7]    The luxury excise taxes imposed by sections 4001 and 4003 were terminated for tax periods after 2002. I.R.C. § 4001(g).

It is well established that statutory analysis begins with a reading of the plain language of the act and any binding authority interpreting the text.  See Bread Political Action Comm. v. Fed. Election Comm'n, 455 U.S. 577, 580 (1982); McEntee v. Merit Sys. Prot. Bd., 404 F.3d 1320, 1328 (Fed. Cir. 2005).  The "words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989).  Only when statutory text is found to be ambiguous should a court resort to legislative history to determine the meaning of the text.  Norfolk Dredging Co. v. United States, 375 F.3d 1106, 1110 (Fed. Cir. 2004); see also VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1579–80 (Fed. Cir. 1990) (ruling that unambiguous statutory language controls unless there is clearly contrary legislative intent or when such a reading produces a result so unlikely that Congress could not have intended it).

In tax cases, a special rule of statutory construction applies.  Specifically, "if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer."  Xerox Corp. v. United States, 41 F.3d 647, 658 (Fed. Cir. 1994) (quoting Hassett v. Welch, 303 U.S. 303, 314 (1938)).

Plaintiff argues that the McLaren is a demonstrator under the plain meaning of the statute.  Plaintiff reasons that Mr. Gonzales intended to use the McLaren as a collector's item for demonstration purposes and notes that, consistent with demonstration purposes, Mr. Gonzales was granted the DOT exemption from normal safety standards available to show or display vehicles.  As further evidence that the car in question was acquired solely for demonstration purposes, plaintiff points out that neither Mr. Gonzales nor his father ever drove the McLaren.  The court considers each of plaintiff's arguments in turn.

> a.   The McLaren Is Not a Demonstrator Either Within the Plain Meaning of the Statute or by Dictionary Definition

The luxury tax statute contains an exemption for "any use of a passenger vehicle as a demonstrator."  § 4002(b)(3).  The term demonstrator is not defined in the statute, and the court is not aware of any case law that has interpreted the language of this exemption.[8]  Plaintiff argues that Mr. Gonzales's treatment of the vehicle manifests a

---

[8]     Plaintiff cites two cases in which a court discusses tax issues related to demonstrators, but does not discuss either the definition of a demonstrator or the demonstrator exemption to § 4001, specifically.  The references to demonstrators in the cited cases are to vehicles used by car dealership employees and thus, favor defendant's proposed definition of a demonstrator.  See Gardner v. Comm'r, 35 T.C.M. (CCH) 1592 (1976) (considering the tax implications of corporations that provide employees with use of demonstrator automobiles until the vehicles are sold); Whipple Chrysler-Plymouth v. Comm'r, 31 T.C.M. (CCH) 230 (1972) (same).

clear intent to display the McLaren's features to other car collectors and thus, compels an application of the excise tax exemption.

Defendant disagrees. Defendant counters that the demonstrator exemption is meant to apply to the display of luxury vehicles by car dealers for retail customers, rather than to private car collectors like Mr. Gonzales and his father.

Plaintiff urges the court to read the term demonstrator broadly in section 4002(b)(3) to find the necessary support for its position. Plaintiff contends that Congress defined the term narrowly elsewhere in Title 26 and could have done so in the provision at issue if it had intended a narrow definition. Pl.'s Mot. 4. By way of example, plaintiff points to the use of the term in the tax provision addressing fringe benefits. There, Congress defined "qualified automobile demonstration use" as "any use of an automobile by a full-time automobile salesman in the sales area in which the automobile dealer's sales office is located if . . . there are substantial restrictions on the personal use of such automobile by such salesman." I.R.C. § 132(j)(3)(B) (making clear that demonstration use by a salesman does not constitute a fringe benefit). Plaintiff seems to argue that the court should not impute a limitation in section 4002(b)(3) if such limitation does not explicitly exist.

The parties invoke various dictionary definitions of the term demonstrator to bolster their respective positions. Plaintiff offers the following definition: "a sample, article, or product used to demonstrate." Pl.'s Resp. 6 (quoting Webster's New 20th Century Dictionary (1949)). Defendant provides the following slightly different definitions of a demonstrator, Def.'s Reply 2–3: "a product ([such] as an automobile) used to demonstrate performance or merits to prospective buyers," Merriam-Webster, www.merriamwebster.com (last visited Jan. 21, 2014), and "a piece of merchandise [that] can be tested by potential buyers," Oxford Dictionaries, www.oxforddictionaries.com (last visited Jan. 21, 2014).

Under the narrow definition supported by defendant, the McLaren would not qualify as a demonstrator. Mr. Gonzales was not a car dealer nor did he act as one during the period of time he owned the McLaren. Moreover, Mr. Gonzales did not intend to show the vehicle to prospective customers. Rather, Mr. Gonzales purchased the car for personal enjoyment and as an addition to his car collection.

Plaintiff's urged definition is a bit broader; however, it too implies that a demonstrator is used for sales purposes. The terms "sample" and "product" connote items for sale.

The provided dictionary definitions support a finding that the demonstrator exemption applies only to automobiles put on display for commercial purposes. The exemption allows intermediate car handlers, such as dealers, to avoid luxury tax liability

for a car "used" as is necessary for sale, and the collection of any owed tax is delayed until the time of sale.  If the demonstrator exemption were construed to apply to collectors who demonstrate their cars to others, like Mr. Gonzales intended, then tax collection could not occur.  Such a circumstance would create an absurd result for a statutory scheme designed to tax luxury vehicles.  The court does not find the demonstrator exemption to apply as plaintiff urges, and because the plain language of the statute controls, the court does not address the legislative history presented by defendant.[9]
See Norfolk Dredging Co., 375 F.3d at 1110.

> b.   The Department of Transportation's Show or Display Exception Is Not Relevant to an Analysis of Excise Tax Liability

Plaintiff contends that the DOT's decision to grant a "show or display" exemption for the McLaren also decides the question of plaintiff's liability for the luxury tax.  The court finds otherwise.

The DOT sets motor vehicle safety standards for all cars imported to the United States.  See 49 U.S.C. § 30111–30128.  In certain circumstances, the DOT might exempt vehicles from compliance with its safety standards.  See, e.g., 49 U.S.C. § 30114.  One such circumstance would extend to a vehicle used for the purpose of show or display. See id. ("The Secretary of Transportation may exempt a motor vehicle . . . from section 30112(a) of this title on terms the Secretary decides are necessary for research, investigations, demonstrations, training, competitive racing events, show or display."). This particular exemption places a 2500 mile limit on the permissible annual mileage of the car.  49 C.F.R. § 591.6(f)(2).

The DOT has pre-approved the McLaren as an eligible vehicle for the exemption. See Dep't of Transp., Vehicles Determined Eligible for Importation for Show or Display, www.nhtsa.gov/cars/rules/import/sdlist040109.pdf .  Thus, the DOT granted the show or display exemption sought by Mr. Gonzales for his McLaren.  Pl.'s App. 52.

---

[9]   The court, however, has considered such history and observes that the legislative history associated with the amended statutory provision makes clear that the demonstrator exemption was intended to apply to car dealers.  The relevant House Report provides that, "[t]he House bill exempts passenger vehicle dealers from paying the luxury tax on vehicles used as demonstrators for potential customers.  Under the [operative statutory] provision, the tax, if any, is to be assessed and paid on the sales price of the vehicle when the vehicle is sold."  H.R. Conf. Rep. No. 103-213, at 557 (1993).  This discussion in the legislative history is consistent with the court's view here that the demonstrator exemption was meant to shield the "middle man" from luxury tax liability.

Plaintiff argues that this DOT determination is also reflective "of the . . . reasoning behind the tax 'demonstrator' exemption." Pl.'s Resp. 6–7.  Plaintiff contends that the act of applying for the exemption from tax liability was consistent with Mr. Gonzales's intent—expressed to DOT—to use the car only for show or display.  Id.

Defendant responds that plaintiff has attempted to conflate two unrelated standards.  Defendant asserts that the show or display exemption from DOT's safety standards is separate from, and has no bearing on, the I.R.C.'s demonstrator exemption.  Compare 49 U.S.C. §§ 30112, 30114, with I.R.C. §§ 4001, 4002.  Defendant points out that the DOT lacks the requisite authority to impose taxes and thus, cannot determine plaintiff's eligibility for a tax exemption. Def.'s Mot. 15.

Defendant emphasizes the different purposes of the two statutory schemes.  The DOT motor vehicle safety provisions allow for the importation of vehicles that do not meet safety standards in certain limited circumstances such as those involving vehicles with historical or technological significance.  See 64 Fed. Reg. 37,878–01.  Contrastingly, the purpose of the demonstrator exception to the imposition of luxury tax is to exempt from liability those car dealers who are acting merely as "middle men."  Underscoring the statutory distinctions, defendant adverts to the well-settled tenet of statutory construction that absent an explicit relationship between the two statutes, a definition from one of the statutory schemes should not be read into the other.  Def.'s Mot. 16 (citing United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 219 (1996);  Papillon Airways, Inc. v. United States, 105 Fed. Cl. 154 (2012) (holding that a FAA certificate was not dispositive as to whether an airline operated on an established line for purposes of the excise tax exemption)).

It is the view of the court that the DOT show or display exemption is wholly unrelated to the demonstrator tax exemption.  Although plaintiff has correctly noted that both statutes offer exceptional treatment to cars that will not be used as passenger vehicles, the statutes address different concerns and serve separate purposes.  The DOT exemption allows a car that does not meet the requisite safety standards to be driven limited distances annually for purposes of show or display.  The demonstrator exemption allows the particular use of a vehicle, without tax consequences.  The standards are not connected, and the court cannot impute a DOT determination to an IRS decision.  See Reorganized CF & I Fabricators, 518 U.S. at 219.  Plaintiff's tax liability for the McLaren is not controlled by DOT's determination that the McLaren was exempt from its safety standards.

      c.     Whether or Not Mr. Gonzales Intended to Drive the McLaren Is Immaterial to Plaintiff's Luxury Tax Liability

          i.     The Purchaser's Intent for the Car

The parties argue about Mr. Gonzales's intent at the time he purchased the McLaren and how he subsequently used the vehicle.

Asserting that Mr. Gonzales did not intend to drive the car, plaintiff points to the purchase of a mere $5000 in car insurance for the McLaren (which was valued at $1.5 million) as evidence that Mr. Gonzales viewed the McLaren "like a piece of art," Pl.'s Resp. 7.  Plaintiff adds that Mr. Gonzales never drove the car.  Plaintiff also asks the court to consider Mr. Gonzales's father's treatment of the McLaren after transfer of the car because Mr. Gonzales's father did "demonstrate" the car to collectors.  Pl.'s Mot. 7.

Defendant contends that the taxpayer's intent at the time of purchase must control the tax liability, reasoning that if tax liability were dependent upon actual use, the tax scheme would be rendered unworkable.  See Worldwide Equip., Inc. v. United States, 605 F.3d 319, 322–23 (6th Cir. 2010) (ruling on the taxability of heavy trucks under I.R.C. § 4051(a), and stating that "a use test would be unworkable since there would be no way of knowing how a given article would be used by the consumer at the time of sale") (quoting Dillon Ranch Supply v. United States, 652 F.2d 873, 881 (9th Cir. 1981)); Freightliner of Grand Rapids v. United States, 351 F. Supp. 2d 718, 728 (W.D. Mich. 2004) ("[B]ecause the taxability of a vehicle [under I.R.C. § 4501] must be determined at the time of the first retail sale, an actual use standard is unworkable.").

Defendant asserts that if driving the McLaren were relevant to this case—and defendant insists that it is not—plaintiff would remain liable for the assessed taxes because Mr. Gonzales intended to drive the car when he imported it.  In support of this position, defendant points to several factors, including: (1) the representation of "on road use" for the vehicle when Mr. Gonzales completed the show or display exemption application, Def.'s App. 68–69, 72; (2) the purchase of liability coverage for the vehicle, Def.'s App. 65–66; and (3) the deposition testimony of the car dealer, Mr. Steve Will, and Mr. Gonzales's father, each of whom expressed the belief that Mr. Gonzales planned to drive the car, Def.'s App. 21 at 59:14–17; 25 at 75:11–13; 43 ¶ 14.

The court is not persuaded that actual use is the proper inquiry for tax purposes, but rather, as defendant argues, the intent at the time of purchase controls.  Here, the car remained in storage during the brief period of Mr. Gonzales's ownership of the McLaren. The car was not driven or shown to collectors.  The parties' arguments regarding whether Mr. Gonzales planned to drive the McLaren miss the mark.  Whether Mr. Gonzales intended to drive the car before he became ill, or whether he intended to garage the car when he was not displaying it for others, does not decide the question of whether the demonstrator exemption applies.  Whether a car can be deemed a demonstrator does not turn on whether the car is driven.  Indeed, a demonstrator would be expected to be driven for the limited purpose of showing its features to potential customers.  Thus, Mr. Gonzales's intent to drive the McLaren would not prevent the estate from claiming this

tax exemption.  The relevant consideration for tax purposes is that the car is a collector's item rather than a demonstrator for use in sales.

ii.      The Purchaser's Use of the Car

Defendant also devotes a portion of its argument to Mr. Gonzales's "use" of the McLaren as a collector's item.  This use, defendant contends, warrants the imposition of a luxury tax.  Section 4001 of the I.R.C. imposes a tax "on the [first] retail sale of any passenger vehicle" for which the price is $30,000 when indexed to inflation.  I.R.C. § 4001(a)(1), (a)(2)(A), (e).  In 2001, the tax rate was 4%.  § 4001(f).

The "[first] retail sale" is defined as "the first sale, for a purpose other than resale, after manufacture, production, or importation."  § 4002(a).  The I.R.C. further provides that "[i]f any person uses a passenger vehicle (including any use after importation) before the [first] retail sale of such vehicle, then such person shall be liable for tax under this subchapter in the same manner as if such vehicle were sold at retail by him." § 4002(b)(1).  In summary, luxury tax liability is triggered upon a car's retail sale or its use after importation.

The government asserts that while neither Mr. Gonzales nor his father ever drove the McLaren, they both had "used" the vehicle.  This use, defendant alleges, included viewing the car that had been acquired as a collector's item, showing it to friends and acquaintances, and loaning the car to a museum as well as to several auto shows.  Def.'s Mot. 10.

Plaintiff concedes that Mr. Gonzales and his father used the McLaren as car collectors would, and the court is persuaded similarly.  See Pl.'s Resp. 4 (referencing Mr. Gonzales's "use" of the McLaren for show and display).  The record indicates that Mr. Gonzales purchased the McLaren for his personal enjoyment and to add to his car collection.  The purpose for the purchase and the use of the car as a collector's item are sufficient to find "use" under the statute and to trigger luxury tax liability under the I.R.C. Given plaintiff's use of the vehicle, and the court's finding that the demonstrator exemption does not apply, plaintiff is liable for the luxury excise tax.

2.      Even if the McLaren Were a Demonstrator, the Tax Became Due<br>When Mr. Gonzales Sold the Car

Defendant argues that, in the alternative, plaintiff was liable for the tax at the time Mr. Gonzales sold the car to his father.  Section 4003(b)(1) states that if a vehicle is exempt from tax on the first retail sale, but is resold within two years of that first sale, then the resale is treated as the first retail sale and is subject to the excise tax. § 4003(b)(1).

As the court explained in Part III.A.1., plaintiff is liable for the excise tax because it used the car as a collector and the demonstrator exemption does not apply on these facts. The court addresses briefly, however, defendant's alternative argument.

Mr. Gonzales transferred the McLaren, the car of interest, to his father in late 2001 in satisfaction of yacht expenses Mr. Gonzales owed his father. Defendant argues that this exchange constituted a sale, and because the sale occurred within two years of Mr. Gonzales's first use of the car, the conveyance to his father was subject to the luxury tax. Def.'s Reply 8. Plaintiff challenges the characterization of the transfer of the car from Mr. Gonzales to his father as a sale. See Pl.'s Mot. 8.

The legal effect of such a transfer is addressed directly in the case law. A transfer of property to satisfy a debt is regarded as a sale for tax purposes. Comm'r v. Keystone Consol. Indus., Inc., 508 U.S. 152, 158 (1993) ("It is well established for income tax purposes that the transfer of property in satisfaction of a monetary obligation is usually a 'sale or exchange' of the property."); see also Wood v. Comm'r, 955 F.2d 908, 913 (4th Cir. 1992) ("The general treatment of the transfer of property in satisfaction of indebtedness as a sale or exchange for tax purposes is long-standing.").

Mr. Gonzales's father does not dispute that the car was transferred in exchange for an owed debt, not as a gift. See Def.'s App. 30 at 97:15–19, 31 at 99:1–14. Thus, the transfer of the McLaren from Mr. Gonzales to his father was a sale for tax purposes. Arguably, even if the McLaren had qualified as a demonstrator under the tax code (which it did not), plaintiff would have become liable for the subject tax at the time of the vehicle's sale to Mr. Gonzales's father.

Plaintiff's arguments do not assist in the avoidance of luxury tax liability. The court turns now to address the issue of the gas guzzler tax.

B.    Plaintiff Is Subject to the Gas Guzzler Tax

Section 4064 of the I.R.C. imposes a "gas guzzler tax" on each sale by the manufacturer of an automobile with a low fuel economy. I.R.C. § 4064(a). "The term 'manufacturer' includes a producer or importer." I.R.C. § 4064(b)(5)(A). As defined in the tax regulations, "[a]n importer is a person who imports an automobile whether or not in connection with a trade or business." 26 C.F.R. § 48.4064-1(b)(2). When an importer uses the imported article, "then he shall be liable for tax under this chapter in the same manner as if such article were sold by him." I.R.C. § 4218(a). The pertinent regulation defining the term "sale" indicates that a sale includes use as described in I.R.C. § 4218. 26 C.F.R. § 48.4064-1(b). Whether Mr. Gonzales used or sold the McLaren, the tax regulations impose upon plaintiff liability for the gas guzzler tax.

Nonetheless, plaintiff disputes any liability, contending that the McLaren was not used as contemplated by the gas guzzler statute and because the vehicle does not qualify as an automobile under the gas guzzler tax provision.

1.      Sale and Use of the Car

Plaintiff claims that the McLaren is not subject to the gas guzzler tax because the term "use" is limited to imports that are used as components in the manufacturing of other articles.  Pl.'s Mot. 8.  Plaintiff further claims that the McLaren is not subject to the gas guzzler excise tax because Mr. Gonzales, who imported the car, did not sell it.  Pl.'s Mot. 8.  Plaintiff's arguments reveal a misapprehension of the statute.

Contrary to plaintiff's assertion, the statute excludes from consideration for tax liability those materials that are used as components in other manufacturing processes.  It provides in relevant part that:

> If any person manufactures, produces, or imports an article . . . and uses it (otherwise than as material in the manufacture or production of, or as a component part of, another article taxable under this chapter to be manufactured or produced by him), then he shall be liable for tax under this chapter in the same manner as if such article were sold by him.

§ 4218(a).  Absent use as a manufacturing component, tax liability is triggered under this provision.  Plainly, the language of the statute does not exempt Mr. Gonzales's use of the McLaren from the gas guzzler tax.  Plaintiff used the vehicle as a collector would, a use that renders plaintiff liable for the gas guzzler tax.  See I.R.C. § 4218(a) ("If any person . . . imports an article . . . and uses it . . ., then he shall be liable for tax under this chapter in the same manner as if such article were sold by him.").

Moreover, the statute makes no distinction between the use of an article and its sale; the same liability is incurred.  § 4218(a).  Thus, plaintiff's effort to cast the transfer of the car from Mr. Gonzales to his father as a non-sale does not persuade, see supra Part III.A.2, and plaintiff is liable for the gas guzzler tax based on Mr. Gonzales's sale of the vehicle to his father in the alternative.

2.      The McLaren Is an Automobile as Contemplated by the Treasury Regulations

Plaintiff avers that because the McLaren was not manufactured primarily for use on public streets, it does not fall within the definition of automobile under the gas guzzler statute.  Pl.'s Resp. 8.  According to the relevant Treasury Regulations, an automobile is defined as "any four-wheeeled vehicle . . . [p]ropelled by an engine powered by fuel

[and] [m]anufactured primarily for use on public streets, roads, and highways." 26 C.F.R. § 48.4064-1(b)(3)(i)–(ii).

Plaintiff contends that the McLaren F1 at issue was intended for use as a show and display vehicle rather than for actual driving. Plaintiff reasons that such a car would not be the sort of vehicle targeted as a "gas guzzler" because such tax is meant to promote fuel economy, an unnecessary objective if the car is intended to be used for show and display and is subject to a limit on the number of miles it can be driven. Pl.'s Mot. 8.

Defendant responds that the McLaren is an automobile as statutorily defined. The manufacturer's promotional materials describe the McLaren as "the finest <u>road car</u> in the world." McLaren Website, F1, http://cars.mclaren.com/f1/the-story.html (last visited April 10, 2014) (emphasis added). The British magazine <u>Autocar</u> described the McLaren as "the finest driving machine yet built for the <u>public road</u>." <u>Autocar</u>, McLaren F1 1992-1998 Verdict, available at http://www.autocar.co.uk/car-review/mclaren/f1-1992-1998/verdict (last visited April 10, 2014) (emphasis added).

As further evidence that the car was made for the road, defendant points to Mr. Gonzales's father's deposition testimony:

A. They're one of the rarest, most exotic cars in the world. There were only 60 of them made for the road.
. . .
Q. And when you say they're the only cars McLaren makes for the road for public roads as opposed to racetracks; is that what you're referring to?

A. I am.

Def.'s App. 13–14 at 29:12–30:2.

The court finds that the McLaren F1 was designed for public road use and qualifies as an automobile under the statute. Although such an expensive and rare vehicle most likely would be driven infrequently and treated as a collector's item, the court is not persuaded that the expectation of limited road use serves to remove the car from being otherwise defined as an automobile "[m]anufactured primarily for use on public streets." 26 C.F.R. § 48.4064-1(b)(3)(ii). Plaintiff is liable for the gas guzzler tax.

The court now considers plaintiff's claim for the abatement of penalties and interest.

C.      Plaintiff Is Not Entitled to Abatement of Penalties and Interest

On July 11, 2005, plaintiff was assessed a penalty in the amount of $10,390.50 for the late payment of an owed tax, pursuant to I.R.C. § 6651(a)(2).  Def.'s Ans. and Countercl. 8.  On August 21, 2006, plaintiff was assessed an additional penalty in the amount of $1,154.50 for the late payment of an owed tax, for a total late payment penalty of $11,545.  Id. at 8–9.  Defendant asserts that statutory interest continues to accrue against the unpaid tax balance.  Id. at 9.  Section 6651(a)(2) of the I.R.C. provides:

> In the case of failure . . . to pay the amount shown as tax on any return . . . on or before the date prescribed for payment of such tax . . . unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate . . . .

I.R.C. § 6651(a)(2).

Plaintiff requests that the court grant relief from any penalties imposed pursuant to section 6651(a) arising from its failure to pay the excise tax at issue in this case. According to plaintiff, Mr. Gonzales's failure to pay the excise tax can be attributed to a reasonable cause and is not the result of willful neglect.  See id.  "Willful neglect" is "conscious, intentional failure" to comply with the provisions of the Internal Revenue Code, or "reckless indifference" to such provisions.  United States v. Boyle, 469 U.S. 241, 245 (1985).  Defendant does not argue that plaintiff's failure to file on time resulted from "willful neglect."  Rather, defendant challenges the reasonableness of the cause offered by plaintiff for its failure to pay the owed taxes.  A plaintiff seeking to avoid liability for an assessed penalty must demonstrate both the absence of willful neglect and a reasonable cause for its failure to pay the tax timely.  See I.R.C. § 6651(a)(2).

A court may find reasonable cause when a taxpayer has "exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship."  Treas. Reg. § 301.6651-1(c)(1).  Defendant asserts that because Mr. Gonzales was a multi-millionaire, a finding of undue hardship would not be proper.  Def.'s Mot. 21.  Plaintiff does not contest defendant's representation, and the court agrees, that no undue hardship is present in this case.  Instead, plaintiff argues that it exercised the requisite ordinary business care and prudence when it failed to pay the applicable tax.

1.      Plaintiff Has Failed to Demonstrate That It Had Reasonable Cause
        for Not Paying the Tax Due

Plaintiff relies on provisions found in the Internal Revenue Manual (IRM) to
support its claim that it had reasonable cause for not paying the tax at issue.  The IRM
sets forth various grounds for the forgiveness of penalties, including a catchall provision
for "any sound reason." IRM § 1.2.12.1.2.

Defendant challenges plaintiff's reliance on the IRM.  Defendant asserts that the
provisions lack the force of law, do not bind the IRS, and confer no rights to taxpayers.

A review of case law indicates that the IRM provides guidance for the internal
administration of the IRS, it does not accord any rights to taxpayers.  See, e.g., Fargo v.
Comm'r, 447 F.3d 706, 713 (9th Cir. 2006); Carlson v. United States, 126 F.3d 915, 922
(7th Cir. 1997); Marks v. Comm'r, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991).
Notwithstanding plaintiff's misplaced reliance on provisions of the IRM, the court
considers plaintiff's reasonable cause arguments in turn.

a.      Ignorance of Law and Mistake

Plaintiff contends that penalties are not appropriate in circumstances such as this,
involving either ignorance of the law or mistake.  Pl.'s Resp. 9–10.  Plaintiff avers that its
own ignorance of the law was reasonable because the IRS did not clearly explain the
pertinent tax rules.  Plaintiff complains that although the 2001 edition of Publication 510
discusses the luxury car tax, it does not provide examples or specifically address the
demonstrator exemption.  I.R.S. Publ. 510, http://www.unclefed.com/IRS-
Forms/2001/HTML/p51008.html.

Plaintiff points to two IRM sections, in particular, as support for its claim of
ignorance of the law or mistake.  The provision addressing Ignorance of the Law states:

In some instances taxpayers may not be aware of specific obligations to file
and/or pay taxes.   The ordinary business care and prudence standard
requires that taxpayers make reasonable efforts to determine their tax
obligations. . . .  Reasonable cause may be established if the taxpayer shows
ignorance of the law in conjunction with other facts and circumstances.  For
example, consider:  (a.) The taxpayer's education, (b.) If the taxpayer has
previously been subject to the tax, (c.) If the taxpayer has been penalized
before, (d.) If there were recent changes in the tax forms or law which a
taxpayer could not reasonably be expected to know, and (e.) The level of
complexity of a tax or compliance issue. . . .  The taxpayer may have
reasonable cause for noncompliance due to ignorance of the law if: . . . [t]he

16

taxpayer was unaware of a requirement and could not reasonably be expected to know of the requirement.

IRM § 20.1.1.3.2.2.6.

The provision addressing Mistake states:

The taxpayer may try to establish reasonable cause by claiming that a mistake was made.  Generally this is <u>not</u> in keeping with the <u>ordinary business care and prudence standard</u> and does not provide a basis for reasonable cause. . . . However, the reason for the mistake may be a supporting factor if additional facts and circumstances support the determination that the taxpayer exercised ordinary business care and prudence but nevertheless was unable to comply within the prescribed time.

IRM § 20.1.1.3.2.2.4.

Plaintiff provides little factual support relevant to its contention that ignorance of the law or mistake should excuse its failure to pay the tax due.  Plaintiff simply asserts that it did not receive notice that the excise tax was due during the importation process and that it would have, and could have, paid the tax if it had known the tax was due.  Pl.'s Resp. 11.

Defendant responds that it is well established that "'ignorance of the law does not amount to reasonable cause' sufficient to invalidate tax penalties."  Def.'s Reply 10 (quoting <u>Christman v. United States</u>, 110 Fed. Cl. 1, 8 (2013)).  Defendant adds that the IRS has no duty to inform taxpayers of taxes owed, observing that the tax system in the United States is built upon self-reporting and self-assessment.  <u>Id.</u> (citing <u>Laing v. United States,</u> 423 U.S. 161, 191 (1976)).

Plaintiff points to the decision in <u>Shao v. Commissioner</u> as support for its argument here that ignorance of the law can excuse penalties.  100 T.C.M. (CCH) 182 (2010).  In that case, a taxpayer had used her stock to secure a loan.  <u>Id.</u> at *1.  Unbeknownst to the taxpayer, the company that provided the loan sold the stock as part of a Ponzi scheme.  The taxpayer did not receive tax forms from the company showing a sale of the stock.  To assist with the preparation of her tax returns, the taxpayer hired a certified financial planner, but did not report the stock sale on her return—consistent with her understanding that her stock holdings were part of a loan transaction.  The IRS assessed taxes and penalties against the stock sale.  The reviewing court ruled that the imposition of penalties was inappropriate in that circumstance because the taxpayer had acted in good faith but had misunderstood the legal effect of the transaction to be a loan rather than a sale.  <u>Id.</u> at *7.

17

Contrastingly, in the instant case, plaintiff has not been misled or defrauded by a third party.  And plaintiff offers no evidence that Mr. Gonzales consulted with an accountant or attorney familiar with excise tax law, as the plaintiff in <u>Shao</u> had done, who might have been able to advise him on this matter.

Plaintiff has failed to show any efforts—reasonable or otherwise—to determine its tax obligations, and as defendant points out, the IRS has no duty to inform taxpayers of taxes owed in the context of a tax system based on self-reporting.  <u>See Laing</u>, 423 U.S. at 191.  The court is not persuaded that plaintiff's alleged ignorance of the law or mistake warrants a finding of reasonable cause for the unpaid taxes.

b.      Death or Serious Injury

Plaintiff alternatively contends that there is reasonable cause for its failure to pay the tax afforded by the IRM's death exception.  That provision states: "Death, serious illness, or unavoidable absence . . . of the taxpayer . . . may establish reasonable cause for filing, paying, or depositing late."  IRM § 20.1.1.3.2.2.1.  Plaintiff argues that Mr. Gonzales's death fits squarely within this exception.

While acknowledging that a serious illness or debilitation might constitute reasonable cause, defendant argues that this exception applies only in circumstances involving an illness that makes it "virtually impossible for the taxpayer to comply [with the tax law]."  <u>Stine v. United States</u>, 106 Fed. Cl. 586, 592 (2012) (quoting <u>Carlson</u>, 126 F.3d at 923).  Defendant notes that plaintiff has not provided proof of debilitation, "such as evidence of lengthy hospitalizations, the severity and continuity of symptoms, and whether [Mr. Gonzales might] have had someone else managing his affairs during the applicable period."  Def.'s Reply 11–12.

The excise tax return and the tax for the third quarter of 2001 that plaintiff challenges in this action were due on October 31, 2001.  Def.'s Reply 20 (Ex. 17).  Mr. Gonzales passed away in December 2001.  Def.'s App. 14 at 31:7–11.  Mr. Gonzales timely filed his 2000 personal income tax return (by extension) on October 19, 2001.  Def.'s Reply 33 (Ex. 18).  Defendant contends that because Mr. Gonzales was able to file his personal income tax return by October 19, it is reasonable to infer that he also could have filed and paid his excise taxes by October 31.

The timely filing of other kinds of taxes during the same time frame that a tax debt is left unpaid can prevent a finding of reasonable cause that excuses the late filing of the latter tax obligation.  <u>See Stine</u>, 106 Fed. Cl. at 597–98 (ruling that there was no reasonable cause for failure to file gift tax return when plaintiff filed and paid federal and state income tax returns during the relevant period).  "Selective incapacity" as to one type of return will not constitute reasonable cause.  <u>Jordan v. Comm'r</u>, T.C. Memo. 2005-266, 2005 WL 3081646, at *3 (2005).

18

The court agrees with defendant that plaintiff has failed to provide any evidence regarding the nature of Mr. Gonzales's incapacity during the time that the tax was due. Notwithstanding the absence of such offered evidence, the court recognizes that given the rapid progression of his illness, Mr. Gonzales was very likely not faring well during the period leading up to his death.  The filing of Mr. Gonzales's income tax return during the same period, however, diminishes the force of plaintiff's claim of incapacity as the basis for failing to file the excise taxes.  See Stine, 106 Fed. Cl. at 597–98.  The court finds that plaintiff has failed to demonstrate that Mr. Gonzales's death furnished reasonable cause for plaintiff's failure to pay the tax due.

c.      Reliance on Car Dealer or Accountant

Plaintiff argues that Mr. Gonzales relied on the car dealer, Mr. Will, to handle all aspects of the importation of the car.  Pl.'s Resp. 10.  Plaintiff suggests that Mr. Will's failure to advise Mr. Gonzales about potential excise tax liability should serve as reasonable cause for plaintiff's failure to pay the tax; plaintiff claims that at no time during the importation process did Mr. Gonzales receive any notice, from either Mr. Will or the IRS, that the McLaren would be subject to excise tax.  Id.  Plaintiff contends that it reasonably expected to be notified of any relevant excise tax during the time that the McLaren was in the custody of Customs, id., and this belief provides a reasonable cause for its failure to pay the owed tax.

Defendant challenges the reasonableness of any reliance by plaintiff on purported tax advice from the car dealer, who was not a tax professional.  Pointing to the lack of any evidence in the record that Mr. Gonzales and Mr. Will ever discussed taxes related to the McLaren, defendant contends that, even if such reliance could have been deemed reasonable, plaintiff has not established any actual reliance.  Def.'s Reply 10–11 (citing Linmar Prop. Mgmt. Trust v. Comm'r, T.C. Memo. 2008-219, 2008 WL 4366069, at *11 (2008) (ruling that a taxpayer had no reasonable cause for failure to file a return absent evidence that the taxpayer sought a tax professional's expertise or that the taxpayer had presented the adviser with all relevant information )).  Plaintiff could not have relied reasonably on a car dealer for tax advice.  Plaintiff's attempt to show reasonable cause by blaming Mr. Will for failing to inform Mr. Gonzales of his tax liability cannot stand.

Plaintiff argued earlier in its first motion for summary judgment (which was denied as premature) that it relied on the guidance of its accountant, Mr. Smith.  See Pl.'s 1st Mot., ECF No. 5, filed Mar. 8, 2012; Order Denying Mot., ECF No. 6, filed Mar. 9, 2012.  Plaintiff does not claim any reliance on its accountant in the current motion for summary judgment, but the court addresses the issue briefly to avoid leaving any offered arguments unresolved.

A taxpayer's reliance on tax law advice received from an accountant or an attorney may provide reasonable cause. <u>Boyle</u>, 469 U.S. at 251. But, here, Mr. Gonzales's accountant, Mr. Smith, stated in his declaration that he has never prepared an excise tax return, he is not familiar with the law in that area, and he does not advise clients on excise tax liability. Def.'s App. 80 ¶ 3. Nor did Mr. Smith recall advising Mr. Gonzales on the tax consequences of his purchase of the McLaren. <u>Id.</u> 80–81 ¶¶ 4, 5. Plaintiff cannot rely on an accountant's advice as reasonable cause for failing to pay the relevant excise tax when the accountant offered no such counsel and had no expertise in excise tax liability.

Plaintiff has failed to demonstrate that it is entitled to any abatement of imposed penalties because it had a reasonable cause for its failure to pay the taxes due.

> 2.    Interest Abatement

In its Complaint, plaintiff argued that it is entitled to interest abatement or suspension based on unreasonable error and delay by the IRS. Compl. ¶¶ 45, 46 (citing I.R.C. §§ 6404(e), (g)). Interest abatement is available to a taxpayer when a deficiency or delay of payment is "attributable . . . to any unreasonable error or delay by an officer or employee of the [IRS] (acting in his official capacity) in performing a ministerial or managerial act." I.R.C. § 6404(e). But in later filings, plaintiff appears to have abandoned this contention. Defendant has asserted that this court lacks jurisdiction to decide a claim for interest abatement. Def.'s Mot. 23. Plaintiff does not respond to the government's jurisdictional argument pertaining to interest abatement.

The court construes plaintiff's silence as a concession that interest abatement is not available in this forum, and in any event, the Supreme Court has spoken clearly on this matter. <u>See</u> <u>Hinck v. United States</u>, 550 U.S. 501 (2007). Exclusive jurisdiction over a claim for review of the IRS's refusal to abate interest rests with the Tax Court. Thus, this court lacks jurisdiction to consider plaintiff's claim for interest abatement. <u>Hinck</u>, 550 U.S. at 506–10 (interpreting I.R.C. § 6404(h) as a "precisely drawn, detailed statute," which limits the forum for adjudication to the Tax Court).

IV.   Conclusion

Plaintiff's motion for summary judgment is **DENIED**. Defendant's cross-motion is **GRANTED**. In addition to the taxes and applicable penalties and interest due, plaintiff is responsible for the additional $20,000 plus interest in excise tax based on the McLaren's valuation at $1.5 million rather than $1 million, as originally assessed. <u>See</u>

Def.'s Ans. and Counterclaim 8; <u>see also</u> discussion of counterclaim <u>supra</u> Part I.  The Clerk of Court shall enter judgment accordingly.

     IT IS SO ORDERED.

<u>s/ Patricia E. Campbell-Smith</u>
PATRICIA E. CAMPBELL-SMITH
Chief Judge